**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

KATHALEEN ST. J. MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 21, 2026

Raymond J. DiCamillo
Sandy Xu
Kaitlyn R. Zavatsky
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Ryan D. Stottmann
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

Re: *MyCarrier, LLC v. Project 44, LLC*,
C.A. No. 2024-0705-KSJM

Dear Counsel:

This letter addresses the motion for attorneys' fees and costs filed by MyCarrier, LLC.[1] The motion requests fee-shifting under Section 11 of the Master Services Agreement (the "Agreement") between MyCarrier and Project 44, LLC.[2] MyCarrier argues that it is entitled to fees because it is the prevailing party, despite an ongoing arbitration between the parties on the breach of contract issues underlying this dispute.[3] Because there is considerable overlap between this action and the arbitration, prudence dictates that the court stay its hand on a fee award until the arbitration panel makes a final determination on the merits.

---

[1] C.A. No. 2024-0705-KSJM Docket ("Dkt.") 126.

[2] *Id.*

[3] For the factual background, see the March 3, 2025 Memorandum Opinion. Dkt. 124.

By way of a brief procedural recap, this case centers on alleged breaches of the Agreement.[4] On July 1, 2024, MyCarrier filed claims to enforce the Agreement and sought an order temporarily restraining P44 from suspending services under the Agreement.[5] MyCarrier moved to expedite proceedings.[6] P44 filed an answer and counterclaims alleging that MyCarrier committed fraud and breached the Agreement by building its own electronic bill of lading ("eBOL") functionality.[7] P44 also moved to expedite.[8] The court granted MyCarrier's temporary restraining order in part and instituted protections for P44,[9] ordering five business days' notice before P44 terminated the agreement or MyCarrier resumed work on its eBOL development.[10] All of this happened in July 2024.

On July 30, 2024, MyCarrier initiated arbitration against P44 under Section 11 of the Agreement.[11] Section 11 of the Agreement requires that the parties arbitrate any dispute arising under the Agreement except "claims for injunctive or equitable relief or claims regarding intellectual property rights[.]"[12] P44 responded by moving in this action for a preliminary injunction to prevent MyCarrier from

---

[4] Dkt. 1 ("Compl."), Ex. 1 (Agr.).

[5] Dkts. 1, 4.

[6] Dkt. 3.

[7] Dkt. 26.

[8] Dkt. 24.

[9] Dkt. 50.

[10] Dkt. 40 at 34.

[11] *See* Dkt. 46.

[12] Agr. § 11.

further developing or marketing its eBOL functionality.[13]   The court scheduled an evidentiary hearing on P44's motion for a preliminary injunction on January 23, 2025.[14]

While the parties pressed toward the preliminary injunction hearing, on September 23, 2024 MyCarrier told the court that it had replaced P44 with an alternative supplier.[15]   On October 4, MyCarrier gave P44 five days' notice that it would resume its eBOL development work.[16]   P44 then moved for a temporary restraining order enjoining MyCarrier from retaining the new supplier's services, re-raising its arguments that MyCarrier's eBOL development breached the Agreement.[17]   The court granted temporary relief in part on October 16, 2024, enjoining MyCarrier from further eBOL development.[18]

The court issued a Memorandum Opinion on March 3, 2025, denying P44's request for a preliminary injunction because P44 did not show that it would suffer irreparable harm.[19]   In that opinion, however, the court found P44 might succeed on the merits in proving MyCarrier breached the Agreement by switching its service provider and continuing to develop its eBOL functionality.[20]

---

[13] Dkt. 55.

[14] Dkt. 56.

[15] Dkt. 60.

[16] Dkt. 65.

[17] Dkt. 66.

[18] Dkts. 77, 84.

[19] Dkt. 124 at 33.

[20] *Id.* at 16.

Because the court denied P44's motion for preliminary injunction, MyCarrier seeks fees under a prevailing-party fee-shifting provision of the Agreement. Section 11 of the Agreement provides:

> In any action or proceeding to enforce rights under this Agreement, the prevailing party will be entitled to recover costs and attorneys' fees. . . . Except for claims for injunctive or equitable relief or claims regarding intellectual property rights (which may be brought in any competent court), any dispute arising under this Agreement shall be finally settled in accordance with the Comprehensive Arbitration Rules of the Judicial Arbitration and Mediation Service, Inc. ("JAMS") by three arbitrators appointed in accordance with such Rules. . . . The prevailing party in any action or proceeding to enforce this Agreement will be entitled to recover costs and attorneys' fees.[21]

The parties agree that Section 11 provides for all-or-nothing fee-shifting, which does not call for any parsing or allocation of prevailing party fees. They dispute whether Section 11 allows the court to determine the prevailing party at this stage given the nature of these proceedings.

MyCarrier argues that Section 11 applied to the preliminary-injunction proceedings before this court. MyCarrier points to the phrase "any action or proceeding" found in the fifth and eleventh sentences of Section 11. According to MyCarrier, the parties' decision to shift fees in "any action or proceeding," rather than "any arbitration" was intentional and encompasses both types of proceedings contemplated in Section 11—arbitral proceedings and court proceedings.

---

[21] Agr. § 11.

P44 disputes that MyCarrier is the prevailing party in these proceedings and further argues that MyCarrier is not entitled to fees until the arbitration is finally resolved. P44 advances factual, contractual, and practical arguments in support of its position. Factually, P44 parses the procedural history of this action, noting when MyCarrier lost and what MyCarrier jettisoned before the preliminary injunction hearing. Contractually, P44 points to language in Section 11 stating that any dispute under the Agreement "shall be finally settled" in arbitration. P44 argues that this language conveys that the parties intended that the arbitrator make the final merits determination for all purposes, including fee-shifting. Practically, P44 argues that it would make sense to wait until the arbitration resolves given the parties' cross-designation of discovery taken in this action for use in the arbitration.

P44 also relies on *L&W Insurance, Inc. v. Harrington*.[22] There, the plaintiff brought an action seeking a preliminary injunction to enforce a contract.[23] As here, the *L&W* contract contained an arbitration provision that bifurcated claims for injunctive relief to court and all other claims to arbitration.[24] And as here, split proceedings ensued.[25] The defendant moved for fee-shifting under a prevailing-party provision after the court denied injunctive relief.[26] The court declined to shift fees because it based its denial of injunctive relief on an incomplete and preliminary

---

[22] 2007 WL 1756540 (Del. Ch. June 6, 2007).

[23] *Id.* at *1.

[24] *Id.* at *4.

[25] *Id.* at *2.

[26] *Id.*

record.[27]  The court reasoned that the arbitrator would be best positioned to award attorneys' fees after making a final ruling on the merits.[28]

This court distinguished *L&W* in *Avaya Inc. v. Charter Communications Holding Co., LLC.*[29]  That case started as competing suits filed in New Jersey and Delaware Superior Court.[30]  Plaintiff then filed a third action in this court to preclude the defendant from litigating in New Jersey.[31]  The Delaware Superior Court then stayed its proceeding in favor of the New Jersey action, mooting the dispute in this court.[32]  The court distinguished *L&W* on the ground that the Chancery action "was a discrete and separate action" from the broader litigation.[33]   The court further reasoned that "there is nothing left to be litigated" in the Chancery action.[34]  For these reasons, the court awarded prevailing-party fees.

Taken together, P44's arguments are persuasive.  Although neither the factual points nor the contractual arguments are terribly persuasive, P44's appeal to practical concerns and the weight of the decisions cited by the parties warrant taking P44's wait-and-see approach.

---

[27] *Id.* at *4.

[28] *Id.*

[29] 2016 WL 381261 (Del. Ch. Jan. 29, 2016).

[30] *Id.* at *1.

[31] *Id.*

[32] *Id.*

[33] *Id.* at *3.

[34] *Id.*

The reality is that this proceeding substantially overlaps with the arbitration issues, so much so that the parties cross-designated discovery. The relationship of this action to the broader dispute distinguishes this case from *Avaya* and leans in favor of the approach taken in *L&W*. Because there is no clean delineation between this action and the arbitration, the binary nature of the all-or-nothing fee-shifting clause cautions against awarding fees and costs right now.

Consideration of MyCarrier's motion for attorneys' fees and costs is thus stayed until after the arbitration panel rules on the merits. The parties are ordered to update the court as events warrant.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. J. McCormick*

Chancellor

cc:     All counsel of record (by *File & ServeXpress*)